

*Filed and Attested by the Office of Judicial Records 30 DEC 2025 04:31 pm B. BALILONIS*

**LEGAL 360 LLC**
Paige A. Joffe, Esquire | ID No.: 330159
1706 Waterloo Street
Philadelphia, PA
(609) 694-8684
legal360llc@gmail.com

|  |  |
|---|---|
| **MICHAEL MILLER**<br>1050 N. Hancock Street<br>Apt. 629<br>Philadelphia, PA 19123<br><br>       Plaintiff,<br><br>  v.<br><br><br>**VERKADA, INC.**<br>406 E. 3rd Avenue<br>San Mateo, CA 94401<br><br>**NICK CARTER;**<br><br>**CHRIS HAMILTON;**<br><br>**DURGA JAYARAMAN;**<br><br>**RYAN BETTENCOURT;**<br><br>**ANGELA MCISAAC; and**<br><br>**JOHN DOES 1-20**<br><br>       Defendants. | IN THE PHILADELPHIA COURT OF COMMON PLEAS - TRIAL DIVISION<br><br><br><br>COMPLAINT – CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

Case ID: 251203537

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA LAWYER REFERRAL & INFO SERVICES
BAR ASSOCIATION
1101 MARKET STREET
PHILADELPHIA, PA 19107

2

Case ID: 251203537

**LEGAL 360 LLC**
Paige A. Joffe, Esquire | ID No.: 330159
1706 Waterloo Street
Philadelphia, PA
(609) 694-8684
legal360llc@gmail.com

|  |  |
|---|---|
| **MICHAEL MILLER**<br>1050 N. Hancock Street<br>Apt. 629<br>Philadelphia, PA 19123<br><br>                    Plaintiff,<br><br>    v.<br><br>**VERKADA, INC.**<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>**NICK CARTER;**<br><br>**CHRIS HAMILTON;**<br><br>**DURGA JAYARAMAN;**<br><br>**RYAN BETTENCOURT;**<br><br>**ANGELA MCISAAC; and**<br><br>**JOHN DOES 1-20**<br><br>                    Defendants. | **IN THE PHILADELPHIA COURT OF COMMON PLEAS - TRIAL DIVISION**<br><br><br>**CIVIL ACTION**<br><br><br>Docket No.:<br><br><br>            **COMPLAINT** |

## INTRODUCTION

Plaintiff Michael Miller ("Plaintiff" or "Mr. Miller"), through his counsel, hereby alleges by way of Complaint against Defendants Verkada, Inc. ("Defendant" or "Verkada"), Nick Carter, Chris Hamilton, Durga Jayaraman, and John Does 1-20 ("Individual Defendants," and collectively with Verkada, "Defendants"), the identity of whom will be determined through discovery, avers as follows:

3

Case ID: 251203537

**PARTIES**

1.      Plaintiff Michael Miller ("Mr. Miller" or "Plaintiff") is an individual residing at 1050 N. Hancock Street, Apt. 629, Philadelphia, PA 19123.

2.      Defendant Verkada, Inc. ("Verkada") is a Delaware corporation with its headquarters in California and doing business in Pennsylvania with an address of 1218 Chestnut Street, 10th Floor, Philadelphia, PA 19107.

3.      Defendant Nick Carter ("Mr. Carter"), Sales Director, acted individually and as an employee/agent of Verkada.

4.      Defendant Chris Hamilton ("Mr. Hamilton"), Senior Regional Sales Manager, acted individually and as an employee/agent of Verkada.

5.      Defendant Durga Jayaraman ("Ms. Jayaraman"), People Partner, acted individually and as an employee/agent of Verkada.

6.      Defendant Ryan Bettencourt ("Mr. Bettencourt"), Senior Vice President of Sales, acted individually and as an employee/agent of Verkada.

7.      Defendant Angela McIsaac ("Ms. McIsaac"), General Counsel, acted individually and as an employee/agent of Verkada.

8.      John Does 1-20, whose identities will be revealed in discovery, acted individually and as employees/agents of Verkada.

**JURISDICTION & VENUE**

9.      This Court has original and general jurisdiction over this matter pursuant to 42 Pa. C.S.A. § 931(a). The claims asserted herein fall within the Court's statutory authority to hear such matters.

4

Case ID: 251203537

10.    Venue is proper in Philadelphia County pursuant to 42 Pa. C.S.A. § 931(b) and Pa.R.C.P. 1006 because all of the unlawful events and practices giving rise to Mr. Miller's claims occurred in Philadelphia County.

11.    This Court has personal jurisdiction over this action because all parties do substantial business in and reside in Philadelphia County.

12.    This is an action for damages that exceeds fifty thousand dollars ($50,000).

## FACTUAL BACKGROUND

13.    This Complaint arises following Defendants' illegal retaliation and discrimination against Plaintiff, a high-performing sales executive who was repeatedly mocked for his skin color and national origin, and terminated in retaliation for opposing not only his own harassment, discrimination, and bullying, but also that experienced by his peer—when he raised concern that he was being bullied, and that his peer was being subjected to sexual harassment, including quid pro quo sexual harassment, he was abruptly fired. The purported reason for his February 2025 firing related allegations from October 2024 raised by management for the first time within days of his contacting Human Resources.

14.    On or around July 10, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

15.    On or around August 5, 2025, the EEOC issued Plaintiff a Right to Sue Letter.

16.    Plaintiff is Spanish, brown-skinned, and was perceived by coworkers as Middle Eastern or South Asian.

17.    Verkada hired Mr. Miller in early 2023 as a Mid-Market Account Executive and quickly became a top performer.

Case ID: 251203537

18.    Mr. Miller was a Founders Club recipient earning over $270,000.00 in FY2025 and on track to exceed that in FY2026.

19.    From 2023 to January 2025, Mr. Miller received only positive performance evaluations.

20.    During the course of his employment, Mr. Miller reported to, among others, Mr. Carter.

21.    Around July 2024, Mr. Miller learned that Mr. Carter was subjecting a colleague, Mr. Miller's peer, to sexual harassment, including quid pro quo sexual harassment.

22.    When Mr. Carter learned of Mr. Miller's knowledge of Mr. Carter's unlawful acts, Mr. Carter engaged in discriminatory and retaliatory actions toward Mr. Miller including by making comments about color and national origin, and by engaging in bullying, and setting out to ensure Mr. Miller would receive sham corrective actions and ultimately be fired.

23.    Other coworkers also repeatedly mocked his skin color, calling him "Pakistani," "Indian," and lodging such statements in front of leadership.

24.    Around January 7, 2025, Mr. Miller was called for a meeting with Chris Hamilton.

25.    Mr. Miller was not provided a reason for the meeting before it commenced.

26.    Mr. Miller was told at the beginning of the discussion that the subject of the meeting was for the delivery of corrective action in the form of a performance improvement plan (PIP), falsely citing performance issues.

27.    Mr. Miller indicated that he was surprised and taken aback.

28.    Mr. Miller explained to Mr. Hamilton that the stated reason for the PIP was without basis.

Case ID: 251203537

29. Mr. Hamilton told Mr. Miller that if Mr. Miller disagreed with his receiving the PIP, that Mr. Miller should speak to Mr. Carter about it.

30. On January 9, 2025, Mr. Miller met with Mr. Carter.

31. During their meeting, Mr. Carter did not explain the basis upon which the PIP arose, only that it dated back to conduct allegedly occuring in October 2024, despire no prior report of the same.

32. Following their meeting, and despite Mr. Miller's urging to the contrary, the PIP remained in place.

33. In the month that followed, consistent with his successful performance record, Mr. Miller exceeded all PIP metrics, including those specified in the sham PIP, and won a merit-based bonus of several thousand dollars.

34. Mr. Miller outperformed nearly all of his peers.

35. Still, the PIP was extended by three more months.

36. On Friday, January 31, 2025, Mr. Miller spoke with Mr. Hamilton and expressed to Mr. Hamilton the conduct by Mr. Carter, indicating his desire to go to Human Resources to make the report.

37. Mr. Hamilton urged him to wait to contact Human Resources until after the weekend.

38. Mr. Miller obliged.

39. After the weekend, on Monday, February 3, 2025, Mr. Miller received an email from Human Resources, suddenly accusing him of "property damage" and "violence" – conduct which, according to Human Resources, occurred four months earlier, in October 2024, despite no report of the same.

7

Case ID: 251203537

40. These allegations had never been raised before and were blatantly fabricated.

41. In fact, there was no investigation related to any conduct by Mr. Miller in October 2024.

42. In the February 3, 2025 email, Human Resources informed Mr. Miller that he was required to meet with them to discuss the fabricated October 2024 allegations.

43. On February 5, 2025, Mr. Miller replied and requested approval for his counsel to be present for the meeting.

44. His request was denied and he was told it was unnecessary for his counsel to be present.

45. While denying Mr. Miller's request to have his own counsel present, Verkada took the unusual step of having its in-house counsel, Angela McIsaac, at the investigative meeting involving the sham allegations from months earlier.

46. Ms. Jayaraman was also present and led the interrogation with condescension, asking questions in a way that suggested answers.

47. When Mr. Miller raised concerns about retaliation and misconduct, and the discrimination and harassment he witnessed and suffered, leadership left the meeting abruptly.

48. Mr. Miller received no instructions on next steps, but remained employed.

49. On Thursday, February 6, 2025, Mr. Miller received a telephone call from Ryan Bettencourt informing him of his termination.

50. Ryan Bettencourt abruptly ended the phone call when Mr. Miller mentioned retaliation.

51. Mr. Miller was terminated without investigation, notice, severance, or justification.

8

Case ID: 251203537

52. Mr. Miller's life changed as a result of Defendants' unlawful acts, and in fact, during his employment, he began to see a therapist in an effort to ameliorate the mental abuse he endured.

## COUNT ONE - DISCRIMINATION
## (TITLE VII & PHRA & PFPO)

53. Mr. Miller incorporates by reference each allegation set forth in the preceding paragraphs as though fully set forth herein.

54. Plaintiff was employed by Defendant Verkada, Inc. and supervised by the Individual Defendants.

55. Plaintiff is a member of protected classes under Title VII, the PHRA, and the PFPO.

56. Plaintiff was qualified for his position and performed his job satisfactorily.

57. Defendants discriminated against Plaintiff based on color and actual and perceived national origin.

58. Defendants took adverse employment actions against Plaintiff because of his protected status, including disparate treatment, discipline, and termination.

59. Plaintiff was treated less favorably than similarly situated employees outside of his protected classes.

60. Defendants' stated reasons for their actions were pretextual.

61. Plaintiff suffered economic loss and emotional distress as a result.

62. Defendants' conduct violated Title VII, the PHRA, and the PFPO.

63. The Individual Defendants aided and abetted the discrimination in violation of 43 P.S. § 955(e).

9

Case ID: 251203537

## COUNT TWO - RETALIATION
### (TITLE VII & PHRA & PFPO)

64.     Mr. Miller incorporates by reference each allegation set forth in the preceding paragraphs as though fully set forth herein.

65.     Plaintiff engaged in protected activity, including but not limited to: opposing, reporting, and/or complaining about conduct he reasonably believed to be unlawful, improper, discriminatory, retaliatory, unethical, or in violation of company policy; and raising concerns regarding workplace treatment, management conduct, and/or employment practices.

66.     Defendants were aware of Plaintiff's protected activity. Plaintiff's concerns were communicated directly to management and/or Human Resources, and Defendants acknowledged, discussed, or responded to those concerns.

67.     The timing and sequence of events between Plaintiff's protected activity and Defendants' adverse actions establish a strong causal connection, including close temporal proximity, escalating hostility, and deviations from Defendants' normal practices.

68.     Defendants' stated reasons for Plaintiff's termination were false, pretextual, and unworthy of credence, and were used as a cover to retaliate against Plaintiff for engaging in protected activity.

69.     Defendants' conduct was intentional, willful, and retaliatory, and demonstrated a conscious disregard for Plaintiff's protected rights.

70.     As a direct and proximate result of Defendants' retaliatory actions, Plaintiff suffered emotional and economic damages.

10

Case ID: 251203537

71. Defendants' conduct violated Title VII, the PHRA, and the PFPO, which prohibit retaliation against an employee for opposing unlawful practices or participating in protected activity.

72. The Individual Defendants aided, abetted, incited, compelled, and/or coerced Verkada's retaliatory conduct and are individually liable pursuant to the PHRA and the PFPO.

## COUNT THREE - HOSTILE WORK ENVIRONMENT
## (TITLE VII & PHRA & PFPO)

73. Mr. Miller incorporates by reference each allegation set forth in the preceding paragraphs as though fully set forth herein.

74. Plaintiff endured unwelcome, severe, and pervasive harassment based on protected classes and in retaliation for reporting unlawful discrimination and harassment.

75. The hostile conduct altered the terms and conditions of Plaintiff's employment.

76. Defendants knew or should have known of the hostile conduct and failed to take corrective action.

77. Plaintiff suffered emotional and economic damages.

78. The Individual Defendants aided and abetted the hostile work environment. The Individual Defendants aided, abetted, incited, compelled, and/or coerced the existence of a hostile work environment and are individually liable pursuant to the PHRA and the PFPO.

## COUNT FOUR - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79. Mr. Miller incorporates by reference each allegation set forth in the preceding paragraphs as though fully set forth herein.

80. At all relevant times, Defendants engaged in a course of conduct that was extreme and outrageous, intentionally and/or recklessly causing severe emotional distress to Plaintiff.

Case ID: 251203537

81.    Defendants' conduct went far beyond the bounds of ordinary workplace disputes and included, but was not limited to:

    a.    Subjecting Plaintiff to a hostile, abusive, and retaliatory work environment;

    b.    Singling Plaintiff out for adverse treatment and heightened scrutiny;

    c.    Retaliating against Plaintiff after he engaged in protected activity and/or raised concerns regarding unlawful or improper conduct;

    d.    Exploiting Defendants' superior power and authority to intimidate, demean, and destabilize Plaintiff;

    e.    Knowingly placing Plaintiff in professionally and emotionally untenable situations; and

    f.    Terminating Plaintiff under false, pretextual, and retaliatory circumstances, despite Defendants' knowledge of the significant emotional harm their conduct was causing.

82.    Defendants knew, or recklessly disregarded, that their conduct created a high probability of causing Plaintiff severe emotional distress. Despite this knowledge, Defendants continued and escalated their misconduct with deliberate indifference to Plaintiff's mental and emotional well-being.

83.    Defendants' actions were intentional, willful, wanton, malicious, and undertaken with reckless disregard for Plaintiff's rights and health.

84.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to:

    a.    Anxiety and panic;

    b.    Emotional anguish, humiliation, and distress;

12

Case ID: 251203537

c.  Sleep disturbance and physical manifestations of stress;

d.  Loss of professional confidence and sense of personal security; and

e.  Ongoing mental suffering requiring coping, recovery, and treatment.

85.  Plaintiff's emotional distress was severe, substantial, and objectively verifiable, and was not the type of temporary or trivial distress that a reasonable person should be expected to endure.

86.  Defendants' conduct was so outrageous in character and so extreme in degree as to exceed all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

87.  As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious emotional and psychological injuries, entitling him to compensatory damages in an amount to be determined by the trier of fact.

88.  Defendants' conduct was undertaken with actual malice and reckless indifference, thereby justifying an award of punitive damages to punish Defendants and deter similar misconduct in the future.

**COUNT FIVE - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

89.  Mr. Miller incorporates by reference each allegation set forth in the preceding paragraphs as though fully set forth herein.

90.  At all relevant times, Defendants owed Plaintiff a duty of care arising from, inter alia:

a.  The special employer-employee relationship;

b.  Defendants' control over Plaintiff's working conditions, livelihood, and professional standing; and

13

Case ID: 251203537

    c.   Defendants' obligation to refrain from conduct that posed a foreseeable risk of emotional harm.

91.    Defendants breached their duty of care by engaging in negligent, careless, and unreasonable conduct, including but not limited to:

    a.   Failing to maintain a workplace free from hostile, abusive, and retaliatory conduct;

    b.   Failing to adequately supervise, train, and discipline managerial employees;

    c.   Ignoring or disregarding Plaintiff's complaints and visible distress;

    d.   Subjecting Plaintiff to unjustified adverse actions and heightened scrutiny; and

    e.   Terminating Plaintiff under circumstances that Defendants knew or should have known would cause significant emotional harm.

92.    Defendants knew or should have known that their conduct created a foreseeable and unreasonable risk of causing Plaintiff serious emotional distress, particularly given Defendants' superior position of power and Plaintiff's vulnerability within the employment relationship.

93.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe emotional distress that manifested in objectively verifiable symptoms, including but not limited to:

    a.   Anxiety and panic;

    b.   Emotional anguish and humiliation;

    c.   Sleep disturbance and physical manifestations of stress;

    d.   Loss of professional confidence and emotional stability; and

    e.   Ongoing mental and emotional suffering requiring coping, recovery, and treatment.

Case ID: 251203537

94.    Plaintiff's emotional distress was serious, substantial, and foreseeable, and was not the type of fleeting or trivial distress that a reasonable person should be expected to endure.

95.    Defendants' negligence was a substantial factor in causing Plaintiff's emotional injuries and related damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, consequential and incidental damages, attorneys' fees, costs of suit, and interest, in an amount greater than $600,000.00, together with such other relief as this Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 1007.1 of the Philadelphia Rules of Civil Procedure, Plaintiff demands a jury trial.

Respectfully submitted,

*/s/ Paige A. Joffe*

_____

Paige A. Joffe, Esquire
Legal 360, LLC
1706 Waterloo Street
Philadelphia, PA 19123
(609) 694-8684
legal360llc@gmail.com

*Attorney for Plaintiff Michael Miller*

15

Case ID: 251203537

# VERIFICATION

I, Michael Miller, Plaintiff, verify that the facts set forth in the foregoing Complaint are true and correct to the best of my information, knowledge and belief. I understand that the statements contained herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_____
MICHAEL MILLER

12/30/25
Date

16

Case ID: 251203537